UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | NO. 3:00CR227 (SRU) |
| VS. | : | |
| | : | |
| FELIPE SANTANA | : | MARCH 13, 2006 |

### DEFENDANT'S SENTENCING MEMORANDUM ON REMAND

The defendant, Felipe Santana, was found guilty after trial in November 2001 and sentenced on October 7, 2002 to a term of imprisonment of 180 months. The defendant was convicted of Conspiracy to Possess with Intent to Distribute 100 Grams or more of Heroin, in violation of 21 U.S.C. Sect. 841 (a)(1), (b)(1) (A) and 846. The defendant appealed his conviction and the sentence to the Second Circuit Court of Appeals. The Second Circuit affirmed the conviction but remanded the case to the District Court for further proceedings in accordance with United States v. Crosby, 397 F.3d 103, 113 (2nd Cir. 2005). This Memorandum is submitted to assist the Court in determining whether it should impose a non-trivially different sentence pursuant to Crosby.

**The Court's Guideline Analysis at the Original Sentencing**

The evidence at trial showed that the defendant became a member of the Estrada drug organization in July 1999, approximately 5 to 6 months

before being arrested. The jury acquitted the defendant of the more serious offense of Possessing with intent to distribute over 1000 grams of heroin. At sentencing, the Government argued that the defendant's base offense level with a criminal history category of 5, should start at a level 35, with a guideline range of 262 to 327 months. The defense, on the other hand, argued that the base offense level should start at 26, or 140 to 175 months based on a relevant conduct of 100 grams or more of heroin distribution.

During the original sentencing hearing, the defendant presented evidence to support his 5k2.0 motion and argued that he had provided assistance to the Bridgeport Police Department Narcotics division through controlled buys, one of which led to the arrest of Nelson Carrasquillo, one of the main co-defendant's in the case. In addition, the defense argued that the Court should have taken into consideration the defendant's background, which included the fact that he was raised by a drug addicted uncle, in a crime ridden area of Puerto Rico, and that he had endured a cycle of misery and abuse throughout a childhood which was void of any educational component.

The defense also argued that the defendant's history as a drug addict, coupled with the fact that his only male role model was a heroin addict, led

2

him to a life where he sought to sustain himself and his addiction through heroin sales, rather than only the financial rewards from those sales. In addition, the defense presented the testimony of two of the defendant's sisters, and that of the defendant himself.

This Court eventually granted a downward departure under 5k2.0 and found that the defendant's base offense level was a 28, or the equivalent of finding that the defendant had a role in the distribution of 400 to 700 grams of heroin. This conclusion, the Court stated, was "not because I think there is better evidence that that's the correct range but because that's the extent of a downward departure I think is appropriate under all of the circumstances of this case". Tr. At 73.

Moreover, although one specific defense argument was not sufficient to grant a downward departure, this Court found that all of the arguments made came into play in deciding to downwardly depart to a level 28, subsequently adding 3 levels up to a 31 to set the guideline range at 168 to 210 months.  The Court eventually sentenced the defendant to the middle of that range, a sentence of 180 months to run concurrent with the sentence he had been serving in state court at the time of his sentencing hearing.

**Federal Sentencing Law After Booker**

Historically, neither the Sentencing Guidelines nor the Sentencing Reform Act were designed or intended to eliminate a sentencing court's authority to depart from an established sentencing range in an appropriate case. The statute specifically authorizes a court to depart when it finds an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described". 18 U.S.C. § 3553 (b).

The Second Circuit has frequently underscored the substantial sentencing discretion retained by District Judges, and the general appropriateness of exercising that discretion whenever warranted. See. United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997) ("Thus, although the sentencing law seeks to eliminate sentencing disparities between similarly situated defendants, it also aims to maintain 'sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors' not accounted for in general sentencing practices.") (citations omitted); United States v. Meritt, 988 F.3d 1298, 1306 (2d Cir. 1993) (Exercise of the departure power, in appropriate circumstances is an essential ingredient of the sentencing system); United States v. Correa-Vargas, 860 F.2d 35, 40 (2d Cir. 1988) ("We prefer to allow the district courts to exercise their sound judgment in departing from the Guidelines, rather than impose rigid adherence to a table of numbers").

4

On January 12, 2005, the United States Supreme Court ruled in <u>U.S. v. Booker</u>, 125 S. Ct. 738 (2005), that the U.S. Sentencing Guidelines are advisory, not mandatory. Moreover, the Supreme Court in <u>Booker</u> laid out a sentencing scheme which requires the sentencing court to consider the Guideline ranges, as well as a number of factors prescribed by 18 U.S.C Sect. 3553 (a). These include:

> (1) the "nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to insure the promotion and respect for the law, provide just punishment for the offense;
>     (B)  insure the sentence provides a deterrence to criminal conduct;
>     (C) to protect the public from further crimes by the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…;
> (5)  any pertinent policy statement issued by the Sentencing Commision…;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

Prior to the Supreme Court's decision in <u>United States v. Booker</u>, the section 3553 (a) requirement that a sentencing judge "consider" all of the above factors was somewhat unclear because subsection 3553(b) (1) required judges to select a sentence within the applicable Guidelines range unless the statutory

5

standard for a departure was met. Booker eliminated the mandatory aspect of the Guidelines, thereby making them "advisory" only in nature.

Moreover, in United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005), the Second Circuit addressed the issue of a sentencing court's duty to consider the Guidelines after Booker, as well what weight to afford them under section 3553(a). The Court concluded that the Guidelines should not be afforded any more weight than any other factor in section 3553 (a), holding that "Sentencing judges remain under a duty with respect to the Guidelines – not the previously imposed duty to apply the Guidelines, but the continuing duty to 'consider' them, along with the other factors listed in section 3553(a)"… Crosby, 397 F. 3d at 111-12.

The Second Circuit has recognized that there will now be instances in which a district judge, after considering all of the factors delineated in Section 3553, will decide to impose a sentence which is neither within the Guidelines range nor imposed pursuant to traditional Guideline departure rules. The Second Circuit has labeled such a sentence to be a "non-Guidelines sentence". 397 F.3d at 111-112.

**The Court Should Impose A Non-Guideline Sentence Which Is Materially Less Than The Original Fifteen Year Term Of Imprisonment.**

The defendant's sentence computed under the Guidelines, included a downward departure by this Court to a base offense level of 28, from what could have been as high as a level 35, or as low as a level 26, from which the court adjusted upwards 3 levels for his role in the offense. The corresponding Guideline range based on the defendant's criminal history category of 5 was 168 to 210 months.

This Court's ultimate sentence of 180 months imprisonment fell within this range. The defendant requests this Court to consider a sentence materially less than fifteen years under the more flexible <u>Booker/Fanfan</u> approach which allows for a more "individualized justice". Although the defendant's conduct merits a substantial period of incarceration, he respectfully requests this Court to consider that the sentencing factors under 18 U.S.C. 3553 can still be satisfied for Mr. Santana by the imposition of a prison sentence which is less than the fifteen years which resulted from a Guidelines analysis.

**The Nature and Circumstances of the Offense**

The Estrada drug organization had been active from the mid to late 1990's in distributing cocaine, cocaine base and heroin in the P.T. Barnum Housing complex in Bridgeport, Connecticut. During the latter portion of its operating years, Frank Estrada, its purported leader, recruited a number of

individuals to act as "lieutenants" in its operation. In July of 1999, Estrada recruited Nelson Carrasquillo into his "family business". Mr. Carrasquillo began selling bricks of heroin on Noble Avenue in Bridgeport. In time, Estrada gave Carrasquillo more quantity to distribute. As a result, Carrasquillo hired another individual, Erasmo Ortiz, to help him sell on Noble Avenue. A short time later, Mr. Ortiz recruited his friend, Felipe Santana (the defendant), to assist in street level sales.

On October 27,1999, the Bridgeport Police Department Tactical Narcotics Team conducted a surveillance at 727 Noble Avenue and observed several suspected narcotics transactions. Thereafter, undercover officers contacted the defendant in order to purchase heroin. Upon doing so, the defendant was arrested and a search of the immediate area purportedly resulted in the discovery of approximately 20 grams of heroin in a bag attached to a piece of clothing which was drying on a clothesline in the rear of the apartment. Mr. Santana was also subsequently arrested on October 29, 1999 and December 21, 1999 by the same Tactical Narcotics Team, one time being found with 35 grams of heroin in his possession, and the other with one gram.

**The History and Characteristics of the Defendant**

The defendant was one month shy of his twenty-sixth birthday at the time of his sentencing hearing. Per the Pre-Sentence Report, the defendant was born in November, 1976, the only child through the union of his mother and father. Mr. Santana's father was reportedly stabbed to death when the defendant was a year old.  The defendant was raised by his uncle and maternal grandmother in Ponce, a gritty, crime ridden area in Puerto Rico. The defendant reported that when he was eight years old, he would see his uncle "shooting up" behind the house.

The defendant's lack of guidance led him to a life of "running the streets", stealing sneakers and bicycles, and eventually being thrown out of school. At the age of 13, the defendant was involved in a robbery which eventually resulted in his being placed in a juvenile detention center in Ponce. The defendant's criminal history in Puerto Rico also included other arrests such as a weapon violation when he was 17 years old for which he received 3 years of prison.

Mr. Santana eventually moved to New Haven, Connecticut with his common law wife upon his release in June 1998.  In May of 1999, he was arrested for his first narcotics violation and subsequently released. While awaiting the disposition of that case during the fall and late 1999, Mr. Santana was arrested for his involvement in this underlying case.  Mr.

Santana was eventually sentenced in May 2000 in his state court case to a prison term of five years to serve, and by this Court to fifteen years of incarceration to run concurrent with that sentence for his involvement in the present case.

Although Mr. Santana has had a history of criminal acts from the time he was young, it should be noted that he had no prior convictions related to narcotics trafficking until his apparent involvement with the Estrada Organization in the fall of 1999. It was this involvement, spurred by his drug use, which led him to his first drug related arrest for which he was presented to state court. Subsequently he was arrested for the same conduct, during the same period of time, and for the same organization, which eventually brought him before this Court for this case.

## The Need for the Sentenced Imposed

As previously noted, the defendant's conduct warrants a substantial jail sentence. In as much, the defendant respectfully requests that this Court consider the non-Guideline factors in its determination of whether the imposition of a materially lesser sentence should be imposed. The defendant posits that the purposes of sentencing (deterrence, rehabilitation, retribution and incapacitation) can be satisfied without the imposition of a fifteen year sentence. Moreover, a substantial jail sentence, but one which is materially

less than fifteen years, coupled with an extended period of supervised release, would still suffice to satisfy the punitive purposes of sentencing, as well as provide both a general deterrent effect and a specific deterrent effect on this defendant because it would still be substantially more severe than any sentence the defendant previously received.

Although the Court has already exercised some discretion by granting a downward departure to a base offense level of 28, the Court was still constrained at the time of sentencing by the Guidelines, and restricted as to the extent of any departure within that Guideline range as authorized by the Guidelines and interpreted by judicial precedent as set forth in this district. As a result, the Court was required to impose a sentence which fell within the Guideline range of 168 to 210 months, even after exercising its discretion with respect to its initial downward departure as to base offense level.

The defendant proposes that the new sentencing procedures under Booker and Fanfan, which allows for a "somewhat more individualized justice", affords this Court greater discretion to consider the impact of any skewing effects which may have resulted from the application of the Guidelines to the present case. While still imposing a substantial prison term, the defendant requests that this Court revisit the subject of sentencing in this

specific case, to determine whether it should impose a sentence which is materially less than the fifteen years of imprisonment previously imposed.

## Conclusion

The defendant understands that this Court previously reached its determination as to what it felt was an appropriate sentence after a careful consideration and review of the offense as well as other factors. The defendant also understands that because of his offense, and prior criminal history, he still merits the imposition of a substantial jail sentence.

Nevertheless, in light of the individual characteristics of this particular defendant and circumstances of this case, the defendant respectfully requests this Court to re-examine the purposes of sentencing as set forth in 18 U.S.C. 3553 to determine whether the imposition of a non-Guidelines sentence which is materially less than fifteen years, should be imposed.

        Respectfully Submitted
        THE DEFENDANT
        FELIPE SANTANA

BY_____

        CARLOS E. CANDAL
        Federal Bar No. ct18667
        Law Offices of Carlos E. Candal, LLC

        205 Church Street, Suite 306
        New Haven, CT 06510
        (203) 562-3000
        FAX: (203) 772-3726
        His Attorney

**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing motion was mailed on this date to the following:

A.U.S.A. Alina Reynolds
915 Lafayette Blvd.
Bridgeport, CT 06604

Felipe Santana
Inmate # 14056-014
Federal Correctional Institution
McKean
P.O. Box 8000
Bradford, PA 16701

_____
Carlos E. Candal, Esq.